STATE OF CONNECTICUT *v.* $7379.54 UNITED STATES CURRENCY
(AC 23273)

Lavery, C. J., and Bishop and Hennessy, Js.

Submitted on briefs September 19—officially released December 9, 2003

*Billy G. Hunt,* pro se, the appellant (owner), filed a brief.

*Frank S. Maco,* state's attorney, and *Leon F. Dalbec, Jr.,* and *David Shepack,* senior assistant state's attorneys, filed a brief for the appellee (state).

*Opinion*

BISHOP, J. The pro se appellant, Billy G. Hunt,[1] was in possession of $7379.54 in United States currency (currency) that was the subject of an in rem proceeding commenced by the state pursuant to General Statutes § 54-36h, entitled in part, "Forfeiture of moneys and property related to illegal sale or exchange of controlled substances or money laundering. . . ." Hunt appeals from the judgment of the trial court ordering the forfeiture of the currency. He claims that the state failed to present clear and convincing evidence that the currency seized from him at the time of his arrest was used in the delivery and distribution of a controlled substance.[2]

---

[1] Because General Statutes § 54-36h, unlike allied forfeiture statutes, General Statutes §§ 54-33g and 22a-250, does not have a provision designating the owner or possessor of currency as a party defendant in forfeiture proceedings, we refer to Hunt as the appellant and not as the defendant.

[2] In addition, Hunt claims that (1) the in rem proceeding violated his right against double jeopardy and (2) the trial judge abused his discretion in failing to recuse himself from the in rem proceeding. Our review of the record, however, reveals that Hunt did not raise those claims at trial. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . Claims that were not distinctly raised at trial are not reviewable on appeal." (Internal quotation marks omitted.) *State* v. *Huff,* 69 Conn. App. 51, 56, 793 A.2d 1190 (2002). Accordingly, we decline to review those issues.

We note, however, that in *United States* v. *Ursery,* 518 U.S. 267, 292, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), the United States Supreme Court held that the double jeopardy clause does not apply to in rem civil forfeitures because such actions are civil in nature and do not involve punishment. Also, as to the recusal issue, it is well settled that "we [will] not ordinarily

On the basis of our review of the record and briefs, we affirm the judgment of the trial court.

From the record, we glean the following facts. On June 30, 1999, a state police trooper stopped Hunt on Route 8 in Beacon Falls for operating a motor vehicle without a rear license plate. A routine police check revealed that there was an outstanding warrant for Hunt's arrest held by the Torrington police department in connection with two narcotics sales, one occurring on May 27, 1999, and the other on June 3, 1999.[3] Accordingly, Hunt was taken into custody. During processing, the trooper discovered in Hunt's front pockets the currency that is the subject of this appeal. Those funds consisted mostly of one hundred, fifty and twenty dollar bills.

Hunt eventually was convicted on those charges. He failed, however, to appear at the sentencing hearing. As a consequence, an arrest warrant again was issued and a lengthy manhunt ensued. Hunt ultimately was detained during the course of another narcotics transaction at which time he had in his possession more than $13,000. On May 8, 2002, the court conducted a hearing pursuant to a petition brought by the state to seek forfeiture of the currency taken from Hunt on June 30, 1999. Hunt asserted that the funds were in no way connected to drug activities. He testified that he derived the seized funds from his activities as a clothing merchant. He further asserted that since 1998, he had operated a successful retail clothing and musical tape business on leased premises in Bridgeport, and that he

review on appeal a claim that a trial judge should have [recused] himself . . . when no such request was made during the trial. . . . Even where a proper ground for disqualification exists, it must be asserted seasonably or it will be deemed to have been waived." (Citation omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982).

[3] Hunt also had been convicted previously of narcotics violations in 1990 and 1992.

previously had been a street vendor of clothing there. To substantiate his assertion, he presented documentary evidence of a business account at a banking institution and offered a check made payable to cash from that account in the amount of $10,000, which he had endorsed on June 18, 1999.

On cross-examination, however, the state asked Hunt why he had not filed tax returns in either 1998 or 1999 and why his business reported zero income for the period ending March 31, 1999. Hunt was unable to answer those questions and, with regard to the business, stated: "I'm not certain. But what I will say is, I mean, I probably did, because there's a lot of times where I don't file taxes or I won't file them right away for the simple fact that I'm just establishing my business. You know, so there's probably been time periods where I didn't file them because I just didn't feel like filing them. I didn't want to file them. I was trying to make excessive amounts of money to establish my business and then file taxes." Additionally, as to his claim that he was a clothing retailer, Hunt was unable to identify any wholesaler from whom he had purchased merchandise. Finally, as to his rental agreement, when asked by the state the name of his landlord in 1999, he responded: "Umm, umm—from—if I'm correct, I believe his last name was Jackson."

Following that hearing, the court concluded that Hunt's claim that he legitimately had earned the currency that was found in his possession through the sale of clothing and music tapes was "preposterous." The court further determined that clear and convincing evidence demonstrated that Hunt was a longtime drug dealer, and that the currency seized from him had been used in the delivery and distribution of a controlled substance. This appeal followed.

A court's determination that the state has met its burden of proof by clear and convincing evidence will

not be overturned on appeal unless we are convinced that the court's decision is clearly erroneous. See *State v. Alterisi*, 47 Conn. App. 199, 204, 702 A.2d 651 (1997). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Lacic v. Tomas*, 78 Conn. App. 406, 410–11, 829 A.2d 1 (2003).

. To make that determination, we must first look to the requirements of § 54-36h. In pertinent part, § 54-36h (a) (1) provides that "[a]ll moneys used, or intended for use, in the procurement, manufacture, compounding, processing, delivery or distribution of any controlled substance" shall be subject to forfeiture to the state pursuant to subsection (b) of § 54-36h. General Statutes § 54-36h (a) (1). Subsection (b) includes, as a condition of forfeiture, that at the in rem proceeding, "the state shall have the burden of proving all material facts by clear and convincing evidence. . . ." General Statutes § 54-36h (b).

Thus, to satisfy its burden of proof at the forfeiture hearing, the state was required to prove the operative facts by clear and convincing evidence. That standard is met only if "the evidence induces in the mind of the trier a reasonable belief that the facts asserted are *highly probably* true, [and] that the probability that they are true or exist is *substantially greater* than the probability that they are false or do not exist." (Emphasis in original; internal quotation marks omitted.) *Charlton v. Commissioner of Correction*, 51 Conn. App. 87, 90, 719 A.2d 1205 (1998), cert. denied, 247 Conn. 961, 723 A.2d 815 (1999).

Our review of the record leads us to conclude that the court's determination that the state met its burden was not clearly erroneous. In assessing the record, we are mindful that the court did not find that the state had proven by direct evidence that Hunt had obtained the seized currency illegally through the sale of drugs. To be credible and reliable, however, evidence need not be direct. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Webb*, 75 Conn. App. 447, 451, 817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003). Moreover, as we have previously stated, "[t]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . [I]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence. . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *State* v. *Chapman*, 46 Conn. App. 24, 34–35, 698 A.2d 347, cert. denied, 243 Conn. 947, 704 A.2d 800 (1997), cert. denied, 523 U.S. 1063, 118 S. Ct. 1393, 140 L. Ed. 2d 652 (1998)." (Internal quotation marks omitted.) *In re Carissa K.*, 55 Conn. App. 768, 783, 740 A.2d 896 (1999). Additionally, "[c]ourts must necessarily rely on circumstantial evidence in many cases and may draw reasonable and logical inferences from [the] facts existing prior to or subsequent to an event for the purpose of reaching a

conclusion of fact. *Shaughnessy* v. *Morrison*, 116 Conn. 661, 664, 165 A. 553 (1933)." (Internal quotation marks omitted.) *Garrett's Appeal from Probate*, 44 Conn. Sup. 169, 186, 677 A.2d 1000 (1994), aff'd, 237 Conn. 233, 676 A.2d 394 (1996).

We therefore conclude that the court's determination was supported by clear and convincing evidence, namely, Hunt's history as a career drug purveyor, the similarity of circumstances of the seizure at issue to a later arrest occurring immediately after a drug transaction in which Hunt also was found to be in the possession of large sums of cash, and Hunt's complete inability to explain credibly the source of the seized currency that was found in his possession. Because the court's conclusion was not clearly erroneous, Hunt's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.