STATE OF CONNECTICUT *v.* LORI C. LANAGAN
(AC 29693)

Flynn, C. J., and Harper and Mihalakos, Js.

---

Argued October 26, 2009—officially released January 19, 2010

*Martha Hansen,* special public defender, for the appellant (defendant).

Rocco A. *Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Nicole I. Christie*, assistant state's attorney, for the appellee (state).

MIHALAKOS, J. The defendant, Lori C. Lanagan, appeals from the judgments of the trial court revoking her probation and committing her to the custody of the commissioner of correction for three years, execution suspended after twenty-five months. The defendant claims that (1) the court improperly denied her motion for judgments of acquittal, (2) the court's finding that she had violated her probation was not supported by sufficient evidence and (3) the court improperly refused to hear evidence relating to her violation of the condition of probation that she cooperate with the department of children and families (department). We affirm the judgments of the trial court.

The court found the following facts. In 2006, the defendant was convicted, under three separate criminal docket numbers, of threatening in the second degree in violation of General Statutes § 53a-62, criminal mischief in the second degree in violation of General Statutes § 53a-116 and criminal violation of a protective order in violation of General Statutes § 53a-223. The court, *Sullivan, J.*, sentenced the defendant to a total effective term of three years of incarceration, execution suspended after thirty days, and two and one-half years of probation. Among the defendant's conditions of probation was the standard condition that she not violate any criminal law of Connecticut or the United States, as well as special conditions, which included that the defendant (1) not assault, threaten or harass Larry Rekas and (2) cooperate with the department.

During her probationary period, the defendant twice was arrested, on February 6 and 14, 2007, following

reports of domestic disturbances at Rekas' house. In the February 6, 2007 incident, the defendant was charged with disorderly conduct in violation of General Statutes § 53a-182.[1] The court found that the defendant intentionally kicked Rekas in the leg, causing him physical injury. In the February 14 incident, the defendant again was charged with disorderly conduct and criminal violation of a protective order. In that incident, the court found that the defendant intentionally pushed Rekas down a flight of stairs in the garage of his home, causing him physical injury.

Also, during her probationary period, the defendant failed to comply with the department's recommendation that she participate in alcohol, domestic violence and mental health treatment. The defendant did not fulfill the department's requirement that she attend the Rushford Treatment Center. According to the court, the defendant did not take the counseling seriously, continued to abuse alcohol and was discharged from the treatment center for unsuccessful participation. In February, 2007, the defendant refused to undergo additional alcohol treatment, despite a request by the department. Further, the defendant refused inpatient treatment at Blue Hills Treatment Center, and she also refused to engage in domestic violence counseling. Finally, the defendant refused to give the department her address, which it needed to ensure that the defendant was not residing with her mother and her children.

The defendant's probation officer, Joseph Gulick, prepared and issued three arrest warrant affidavits for the charges of violation of probation. The defendant

---

[1] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ."

subsequently was arrested and charged with violating
the terms of her probation in violation of General Stat-
utes § 53a-32.[2] The state alleged in three separate long
form informations that the defendant had violated her
probation in six different ways.

On December 21 and 27, 2007, the court, *Swords,
J.*, conducted a violation of probation hearing, which,
during the adjudicative phase, included testimony from
Gulick, Rekas, state police Trooper Ryan Luther, who
responded during the February 6 incident, and Melissa
Gautier, a department supervisor. The court found by
a preponderance of the evidence that the defendant
had committed the criminal acts underlying her arrests
and that she had failed to follow the treatment plan
recommended by the department. On these grounds,
the court found that the defendant had violated the
conditions of her probation. In the dispositional phase
of the probation hearing, the court determined that the
beneficial purposes of probation would not be served
by offering the defendant further probationary services
due to her multiple failures to comply with the condi-
tions of probation. The court revoked the defendant's
probation and sentenced her to a total effective term
of three years of incarceration, execution suspended
after twenty-five months, followed by probation for
twenty-two months. The defendant subsequently
appealed to this court. In this appeal, the defendant
challenges the court's findings at the adjudicative phase
of the probation revocation hearing. Additional facts
and procedural history will be provided as necessary.

I

The defendant first claims that the court improperly
denied her motion for judgments of acquittal. In that

[2] General Statutes § 53a-32 (a) provides in relevant part: "At any time
during the period of probation . . . the court or any judge thereof may
issue a warrant for the arrest of a defendant for violation of any of the
conditions of probation . . . ."

motion, she argued that, insofar as the state alleged that she had failed to cooperate with the department, the evidence was insufficient. On appeal, the defendant argues that the court based its decision that she failed to cooperate with the department on unreliable hearsay. We disagree.

Although the defendant characterizes her claim in terms of evidentiary sufficiency, it is, in essence, a claim that the court improperly relied on hearsay testimony. In considering the defendant's precise claim, we note that "the rules of evidence do not apply to probation proceedings." *State* v. *Quinones*, 92 Conn. App. 389, 392, 885 A.2d 227 (2005), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006); see also Conn. Code Evid. § 1-1 (d) (4). "It is well settled that probation proceedings are informal and that strict rules of evidence do not apply to them. . . . Hearsay evidence may be admitted in a probation revocation hearing if it is relevant, reliable and probative." (Citation omitted.) *State* v. *Verdolini*, 76 Conn. App. 466, 471, 819 A.2d 901 (2003). At the same time, "[t]he process . . . is not so flexible as to be completely unrestrained; there must be some indication that the information presented to the court is responsible and has some minimal indicia of reliability." *State* v. *Young*, 63 Conn. App. 794, 800, 778 A.2d 1015, cert. denied, 258 Conn. 903, 782 A.2d 140 (2001).

Gautier testified as a representative of the department regarding the steps it took to treat the defendant's ongoing substance abuse problems. Gautier specifically testified that the defendant failed to complete alcohol abuse counseling at the Rushford Treatment Center, refused treatment at Blue Hills Treatment Center and refused domestic abuse counseling. Although much of the evidence presented by Gautier was hearsay, the court nevertheless properly found that "that hearsay was nonetheless reliable and probative in that it was information gleaned solely from [the department's]

files, which . . . Gautier had with her and consulted on numerous occasions during her testimony." Our careful review of the record, as well as the arguments advanced by the defendant, does not lead us to conclude that the court improperly admitted the testimony at issue.

II

Next, the defendant claims that there was insufficient evidence to sustain the court's finding that she had violated her probation. According to the defendant, the majority of the state's evidence was hearsay or based on inconsistent testimony. We disagree and conclude that the testimony was sufficient for the court to find that the defendant violated her probation.

As a preliminary matter, we set forth the legal principles and the standard of review pertinent to our discussion. "[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked." (Internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007). "Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004).

The defendant's claim in this case pertains to the first component of the revocation hearing, the adjudicative phase. "In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance

of the evidence that the defendant violated the terms of [her] probation." (Internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 79, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). "As a reviewing court, we may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Durant*, 94 Conn. App. 219, 224, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007).

We conclude that there was sufficient evidence for the court to find that the defendant violated her probation by engaging in criminal conduct on February 6 and 14, 2007. At the defendant's probation hearing, Rekas testified extensively about the incidents that led to the defendant's disorderly conduct arrests. Rekas detailed the confrontations that led to the defendant kicking him in the leg on February 6, 2007, and pushing him down a staircase on February 14, 2007. Although the defendant testified that those incidents never occurred,[3] the court clearly credited the testimony of Rekas and rejected the testimony of the defendant.[4] In addition to

---

[3] The defendant refers to a discrepancy in Rekas' testimony to claim that his version of the events is not believable, and, thus, the court could not have found a violation of probation by a preponderance of the evidence. Pertaining to the February 6, 2007 incident, Luther testified that Rekas told him that Rekas was kicked in the left calf by the defendant, while Rekas testified at the probation hearing that the defendant had kicked him in the back of his right leg. Nevertheless, the court was justified in determining that the defendant used physical force against Rekas in a sufficient manner to constitute disorderly conduct.

[4] Judge Swords specifically stated in her findings of fact that "[t]he court further finds that the defendant's claim that she did not kick . . . Rekas

the fact that the defendant violated state law, which constituted a violation of the standard condition of probation, we also recognize that the defendant does not challenge the court's findings that her actions on February 6 and 14, 2007, violated the special condition of probation that she not assault, threaten or harass Rekas.

In essence, the defendant's sufficiency of the evidence claim is more or less a challenge to the court's determinations of witnesses' credibility. Although the defendant couches her argument in terms of insufficiency of the evidence, she confuses the issues of sufficiency and credibility. "As the sole finder of fact in the probation revocation proceeding . . . the court was entitled to arrive at its own conclusion regarding the witnesses' credibility and what weight to afford their testimony." *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). Because the weight to be given to the credibility of a witness is within the sole province of the trier of fact and will not be reviewed on appeal; *Sanders* v. *Dias*, 108 Conn. App. 283, 294, 947 A.2d 1026 (2008); we cannot say that the court's decision was clearly erroneous.

We conclude, therefore, that the court had before it sufficient evidence to support its finding, by a fair preponderance of the evidence, that the defendant violated the conditions of her probation that she not commit a crime or assault, threaten or harass Rekas.

### III

Finally, the defendant argues that the court improperly refused to hear evidence relating to the validity of the condition of probation that she cooperate with the department. We decline to address this claim.

---

on February 6 to be not credible" and that "[t]he defendant's claim that she did not push . . . Rekas down the stairs is not credible."

We acknowledge that a violation of any one condition of probation would suffice to serve as a basis for revoking the defendant's probation. "Our law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." *State* v. *Widlak*, 74 Conn. App. 364, 370, 812 A.2d 134 (2002), cert. denied, 264 Conn. 902, 823 A.2d 1222 (2003); see also *State* v. *Payne*, 88 Conn. App. 656, 660, 870 A.2d 1159, cert. denied, 274 Conn. 903, 876 A.2d 13 (2005). It is clear that the court had sufficient evidence to determine that the two incidents involving Rekas constituted probation violations. Thus, even if we were to assume, arguendo, that there was insufficient evidence for the court to find that the defendant failed to comply with the conditions set by the department, the trial court properly still would have found that the defendant violated her probation.

The gravamen of the defendant's claim is that the court refused to hear evidence challenging the validity of the term of probation that the defendant cooperate with the department. We conclude that, because the court properly found by a fair preponderance of the evidence that the defendant violated the standard condition of probation that she not engage in criminal activity, as well as the first special condition of her probation concerning Rekas, we need not address the defendant's claim regarding her compliance with the department. The defendant has challenged only the court's finding in the adjudicative phase of her probation revocation hearing, and, thus, it would serve no useful purpose to consider whether the court improperly precluded the defendant from eliciting testimony to challenge the validity of the condition of probation requiring her to cooperate with the department.

The judgments are affirmed.

In this opinion the other judges concurred.