# STATE OF CONNECTICUT *v.* CARL FISHER
## (AC 29519)

Flynn, C. J., and Alvord and Foti, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 1, 2009—officially released May 25, 2010

*Timothy F. Butler*, with whom, on the brief, was *Thomas E. McCabe*, for the appellant (defendant).

*Judith Rossi*, special assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, *Robin S. Schwartz*, assistant state's attorney, and *Warren Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Carl Fisher, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32 and committing him to the custody of the commissioner of correction for six years of incarceration, execution suspended

after thirty-nine months, followed by ten years proba-
tion with special conditions. The defendant makes four
claims on appeal. First, the defendant claims that the
court impermissibly restricted his cross-examination of
a witness and violated his sixth amendment right to
confrontation[1] because the state could not provide an
audio recording of that witness' 911 telephone call.
Alternatively, if we determine that the court's ruling was
proper, the defendant argues that the court improperly
failed to draw a negative inference from the absence
of a 911 recording. Next, he claims that the court
improperly found that there was sufficient evidence
before it to establish, by a preponderance of the evi-
dence, that he violated the terms of his probation by
violating a criminal law of another state. The defendant
also claims that the court violated his state and federal
constitutional rights by sentencing him on the basis of
an inference of a lack of remorse improperly drawn
from his having remained silent throughout the pro-
ceeding. Last, he claims the court exceeded its authority
in sentencing him to serve six years incarceration, exe-
cution suspended after thirty-nine months, followed by
ten years probation with special conditions. We affirm
the judgment of the trial court.

The following facts and procedural history underlie
the defendant's appeal. In September, 1997, the defen-
dant was convicted of sexual assault in the first degree
and risk of injury to a child as a result of an incident
that occurred in 1996.[2] He subsequently was sentenced
to a term of ten years incarceration, suspended after
four years, followed by ten years of probation with

---

[1] The sixth amendment to the United States constitution provides in rele-
vant part: "In all criminal prosecutions, the accused shall enjoy the right
. . . to be confronted with the witnesses against him . . . ."

[2] The facts underlying the defendant's conviction are set out in *State* v.
*Fisher*, 52 Conn. App. 825, 826–27, 729 A.2d 229, cert. denied, 249 Conn.
912, 733 A.2d 232 (1999).

special conditions. Some time after his release from incarceration and the commencement of his term of probation, the defendant moved to New York City and resided there in a townhouse located at 56 Bank Street. On May 30, 2007, at approximately 9:30 a.m., the New York City police department received a 911 telephone call in which the caller, Bittman Rivas, reported that a nude man was on the stoop of the 56 Bank Street townhouse masturbating. Rivas later testified that he saw a white lotion on the defendant's hands while the defendant masturbated on the stoop. Eric Chaffer and his partner, both New York City police officers, were dispatched to the address. Upon arrival at the scene, the officers found no one on the stoop. The officers contacted the department's central dispatching unit, which then called Rivas and instructed him to go to the officers' police cruiser located near the scene. Rivas indicated to the officers where the incident took place and described the perpetrator as well as what he had witnessed him doing. The officers then rang the doorbell at 56 Bank Street. After some minutes elapsed, the defendant answered the doorbell. After questioning the defendant for a few moments, the officers requested his permission to enter the residence in order to continue their investigation. The defendant consented, and the officers entered the residence with him.

Accompanied by the defendant, the officers examined the entire residence. Chaffer testified that prior to entering the townhouse, he observed a trail of droplets of a "white liquid" which he "took to be hand cream" near the doorway just outside the door. He further testified that upon entry, he observed a silver dollar sized "dollop" of the white liquid just inside the door on the floor. When Chaffer pointed out the white liquid to the defendant, the defendant attempted to wipe away the globules of white liquid with his hand and the sole of

his slipper. The officers completed their investigation and then placed the defendant under arrest. The defendant was charged with one count each of public lewdness in violation of New York Penal Law § 245.00 and exposure of a person in violation of New York Penal Law § 245.01.

Following the defendant's arrest in New York, a probation officer in Connecticut filed a violation of probation motion, form JD-CR-59V, alleging that the defendant had violated a criminal law. A violation of probation proceeding followed. At the end of the adjudicative phase of the proceeding, the court found that the defendant had violated the terms of his probation. Then, following the dispositional phase of the proceeding, the court revoked the defendant's probation and sentenced the defendant to a term of incarceration of six years, suspended after thirty-nine months, followed by ten years of probation. From the judgment revoking probation, the defendant appeals. Additional facts will be set forth as necessary.[3]

I

First, the defendant claims that the court impermissibly restricted his cross-examination of Rivas and violated the defendant's sixth amendment right to confrontation because the state could not provide an audio recording of Rivas' 911 telephone call. Specifically, he claims that the court improperly failed to strike Rivas' testimony. Alternatively, if we determine that the

---

[3] We note that the defendant has not submitted a transcript signed by the trial court. See Practice Book § 64-1. He did submit, however, an unsigned transcript. "On occasion, we will entertain appellate review of an unsigned transcript when it sufficiently states the court's findings and conclusions." (Internal quotation marks omitted.) *State* v. *Oliphant,* 115 Conn. App. 542, 544, 973 A.2d 147, cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009). We have reviewed the unsigned transcript and conclude that it provides an adequate record for review of each of the defendant's claims.

court's ruling was proper, the defendant argues that the court improperly failed to draw a negative inference from the absence of a 911 recording. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. On November 15, 2007, the defendant filed with the court a motion to dismiss[4] in which he argued, inter alia, that Rivas' testimony should be stricken because the failure to preserve a recording of Rivas' 911 telephone call, as required by New York law, was also a failure by the state to preserve a prior statement of a material witness.[5] The defendant sought, in the alternative, an adverse inference against Rivas and the state, claiming that "the content of the 911 call must be inferred to be favorable to the defendant because the evidence was not preserved under New York law." On November 16, 2007, after the close of evidence in the adjudicatory phase, the court heard oral argument on the defendant's motion. The defendant again argued that Rivas' testimony should be stricken

---

[4] The motion was entitled: "Defendant's Objection to State's Missing Witness Notice; Defendant's Notice of the State's Missing Witnesses; and Motion to Dismiss With Prejudice."

[5] On August 31, 2007, the defendant filed a request for disclosure and production seeking, in part, exculpatory information generally and, specifically, "any statements of the witnesses in the possession of the prosecuting authority . . . including state and local law enforcement officers, which statements relate to the subject matter about which each witness will testify . . . ." On September 5, 2007, at the commencement of the adjudicatory portion of the probation hearing, the defendant sought a continuance, in part, because the state had failed to comply fully with his discovery request. The defendant indicated to the court that he had yet to receive from the state a copy of the recording of Rivas' 911 telephone call. The defendant contended that he could not effectively cross-examine Rivas without the recording of the 911 telephone call. The state, in response, indicated to the court that it had been notified by the communication division of the New York City police department that Rivas' 911 telephone call had not been recorded. It also indicated that the defendant had been furnished with a certified copy of a New York City police department communication division certification that expressly stated that the call "[d]id [n]ot [r]ecord." The court denied the defendant's motion, and the hearing proceeded.

or, because the tape was not preserved and the state relied indirectly on it, that the court "kind of charge [itself] and make [itself] aware that, you know, there was this tape here." The defendant contended that because Rivas testified that the call lasted ten minutes, but his cellular telephone records that were admitted into evidence indicated that the call lasted only three minutes, the recording was central to the determination of whether the defendant had violated his probation. The court denied the request to strike Rivas' testimony. In regard to the defendant's request for an adverse inference to be drawn, the court noted first that the proceeding was before the court rather than a jury. It then stated that, essentially, it understood the defendant's motion as an appropriate request for the court to consider the absence of the tape as it related to Rivas' overall credibility.

On December 3, 2007, the defendant filed with the court a corrected motion for a new trial. In it he argued, inter alia, that the court should grant a new trial because it improperly had denied his request to strike Rivas' testimony or, in the alternative, because it failed to draw a negative inference against the state. The court heard oral argument on the corrected motion for a new trial on December 20, 2007, in which the defendant made essentially the same arguments he had made in his motion to dismiss and the accompanying oral argument on that motion. The court admitted into evidence, without objection, a certified copy of a New York City police department communication division certification that expressly stated that the call "did not record." See footnote 5 of this opinion. After the court heard both parties on the matter, it denied the motion to dismiss.

On appeal the defendant contends that the "failed disclosure of the [recording of the 911 telephone call] infringed upon the defendant's sixth amendment right

[of confrontation] and his ability to have properly cross-examined Rivas" because the recording was a prior witness statement, the absence of which prejudiced the defendant. In other words, the defendant claims that the missing recording was material evidence that the state was constitutionally required to provide to him and that its failure to do such was harmful. Moreover, the defendant asserts, the state was obligated to provide the recording because under New York law, the police were required to record and to preserve Rivas' 911 telephone call.[6] The defendant avers that under New York law the "destruction" of 911 recordings would have led to a court in that state fashioning a remedy such as striking Rivas' testimony or to an adverse inference being drawn as to the contents of the tape. Therefore, he maintains, the state "should not be allowed to derive the benefit of such evidence and then consequently disown the responsibilities imposed by [New York] with respect to such evidence . . . ." Such an argument here is untenable.

Initially, we note that the loss of liberty that results from a revocation of probation is a severe deprivation that requires affording probationers certain constitu-

---

[6] The defendant purports that § 5203 (e) of title 21 of the New York Codes, Rules and Regulations required the police to record Rivas' 911 telephone call. Section 5203.2 (e) provides in relevant part: "Recorder system. The [local governmental authority operating the public safety answering point] shall: (1) ensure that all emergency communications to and from all [public safety answering points], including telephone and radio transmissions, shall be recorded; (2) have a written policy establishing procedures for the playback and recording of emergency communications; (3) have a written policy for the securing and storage of recordings; (4) establish criteria, and have a written policy for, access to recordings; (5) retain [public safety answering point] recordings for at least 90 days; and (6) ensure that instant playback units are located at all call-taker positions."

A public safety answering point is "a site designated and operated by a governmental entity for the purpose of receiving emergency calls from customers of a wireless telephone service supplier." N.Y. Comp. Codes R. & Regs. tit. 21, § 5203.1 (a).

tional protections during the proceeding. See *Payne* v. *Robinson*, 207 Conn. 565, 574, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988); but see *State* v. *Oliphant*, 115 Conn. App. 542, 548 n.5, 973 A.2d 147 (noting that "[r]evocation of [probation] is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to [probation] revocations" [internal quotation marks omitted]), cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009). Moreover, "[t]here is no doubt of the constitutional obligation of a prosecutor to disclose all material evidence favorable to an accused in his possession, an obligation that exists without statutory or practice book mandates." (Internal quotation marks omitted.) *State* v. *Green*, 194 Conn. 258, 264 n.6, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985).

The record reveals that this is not a case in which the state withheld, destroyed or even lost a recording of a 911 telephone call. Our review of the record reveals that the state never had possession of a recording of Rivas' 911 telephone call for the mere fact that one never existed. The defendant does not refute that Rivas' 911 telephone call was never recorded, and, yet, he maintains that the state's failure to produce such a recording violated his constitutional right of confrontation. "In order to establish [a constitutional violation, however], the defendant must demonstrate [that] the prosecution *had possession* of material information favorable to the accused . . . . *State* v. *Falcone*, 191 Conn. 12, 17, 463 A.2d 558 (1983); *State* v. *Crumble*, 24 Conn. App. 57, 63, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991)." (Emphasis in original; internal quotation marks omitted.) *State* v. *DeMasi*, 34 Conn. App. 46, 52, 640 A.2d 138, cert. denied, 230 Conn.

906, 644 A.2d 920 (1994). As a result, we conclude that because the defendant cannot demonstrate that the state ever possessed a recording of Rivas' 911 telephone call, he has not established a violation of his constitutional right of confrontation.

Moreover, the defendant's argument, which is that because New York ostensibly was obligated to preserve a recording of Rivas' 911 telephone call, the court, in essence, was required to treat the absence of the recording as a sanctionable failure of the state, is without merit. First, we have not found, nor has the defendant provided, any case law suggesting that a trial court, when conducting a revocation of probation hearing in which the violation of probation involves the probationer's having violated a criminal law of another state, must apply the procedural protections afforded in that state under the circumstances presented here.[7] Moreover, on the basis of our review of the record we cannot conclude that it was improper for the court to conclude that, because the recording never existed, the state was under no obligation under statute, the rules of practice or the federal constitution to provide that which did not exist and that it was not obligated to create or to maintain.

In *State* v. *Cain*, 223 Conn. 731, 613 A.2d 804 (1992), our Supreme court concluded that "despite the fact that the language of Practice Book § 749 (2) [now § 40-15 (2)], read literally, would cover the tape recording of a 911 telephone call, it is not within the intent of that language to cover such a tape recording and that, therefore, a tape recording of a 911 telephone call is not a statement within the meaning of [Practice Book § 40-

---

[7] We express no opinion as to whether, under New York law, the failure of the police to record Rivas' 911 telephone call would expose the prosecuting authority to sanctions in a criminal proceeding there.

15 (2)] that is subject to preservation and to disclosure . . . ." (Internal quotation marks omitted.) Id., 738–39. See *State* v. *Johnson*, 288 Conn. 236, 279, 951 A.2d 1257 (2008) (review of our case law generally reveals nothing that would support existence of affirmative duty to create evidence or to record entirety of communications with witnesses). The court, therefore, did not act improperly in denying the defendant's motion to dismiss and his corrected posttrial motion for a new trial or in denying the defendant's request to strike Rivas' testimony.

## II

The defendant next claims that the court improperly found that there was sufficient evidence before it to establish, by a preponderance of the evidence, that he violated the terms of his probation by violating a criminal law of another state. We disagree.

"In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance of the evidence that the defendant violated the terms of [her] probation. . . . As a reviewing court, we may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Lanagan*, 119 Conn. App. 53, 59–60, 986 A.2d 1113 (2010).

Rivas testified at the defendant's revocation hearing,[8] as did Chaffer.[9] The court noted that Rivas was the only individual who had witnessed the defendant on the stoop that morning. The court found that there was nothing in the evidence before it to indicate that Rivas had any motivation to testify as he did "other than his belief in what he observed." The court stated, nevertheless, that "[i]t would be difficult for this court to find, even by a preponderance of the evidence, that [the defendant] had violated the terms of . . . his probation based solely on the testimony of . . . Rivas." The court, however, noted Chaffer's corroborating testimony. Particularly, the court noted "the corroborating testimony of [Chaffer's] observations of the white cream or liquid present at the scene, which become the link to the observations of . . . Rivas, who stated [that] he saw a white cream on [the defendant's] hands while he was naked and touching himself, or masturbating, on the front porch." The court then expressly found

---

[8] The court summarized Rivas' testimony as follows: "The primary witness for the state was Bittman Rivas. He testified he was working on the day in question, May 30, 2007, he was walking down 12th Street, which intersects with Bank Street, at approximately 9:30 in the morning. He saw the person later identified as [the defendant] on [the defendant's] front porch, or stoop, naked, and . . . touching himself in his private area. [Rivas] stated he believed [the defendant] was masturbating. . . . Rivas [testified that he] was twenty-five to thirty feet away from [the defendant]. . . . Rivas believes he witnessed the event up to six times, six times [the defendant] coming in and out of the doorway and emerg[ing] outside, naked, masturbating. . . .

"Rivas indicated he could see a white cream or liquid on his hand while he was touching himself. . . . Rivas was across the street on the side of a restaurant looking through a window while making this observation. . . . There [were] no other eyewitnesses to corroborate . . . Rivas' testimony."

[9] The court summarized Chaffer's testimony as follows: "[Chaffer] testified that he responded to [a] 911 call; he found . . . Rivas and asked him what he [had seen]; he then went to [the defendant's] doorway; the [defendant] was [dressed] in a T-shirt, sweatpants and some kind of flip-flops; he came outside. While being questioned by [Chaffer], a white cream or liquid— described by . . . Chaffer as dollops—were observed on the ground both inside and outside of [the defendant's] door. The officer also testified he observed the cream on the doorknob."

that Chaffer's testimony was corroborative of Rivas' testimony.

The defendant argues in support of his claim that he proffered substantial evidence that "significantly challenged the motive and credibility of [Rivas]," and, therefore, the court's finding that the defendant violated his probation based on the exhibits and testimony was clearly erroneous. We reject this claim.

As a reviewing court, we may not retry the case or pass on the credibility of witnesses. *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 511, 772 A.2d 160 (2001). Our review of factual determinations is limited to whether those findings are clearly erroneous. Practice Book § 60-5; *State* v. *$7379.54 United States Currency*, 80 Conn. App. 471, 474–75, 844 A.2d 220 (2003). We must defer to the trier of fact's assessment of the credibility of the witnesses, which is made on the basis of its firsthand observation of their conduct, demeanor and attitude. *Boulware* v. *Commissioner of Correction*, 66 Conn. App. 869, 872, 786 A.2d 456 (2001), cert. denied, 259 Conn. 913, 791 A.2d 564 (2002).

The court, as the finder of fact, found that Rivas' and Chaffer's testimony was credible. The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact. *State* v. *Bostwick*, 52 Conn. App. 557, 561, 728 A.2d 10, appeal dismissed, 251 Conn. 117, 740 A.2d 381 (1999). The court performed its duty, and we will not usurp its function. See *State* v. *Campbell*, 61 Conn. App. 99, 103, 762 A.2d 12, cert. denied, 255 Conn. 934, 767 A.2d 105 (2000).

### III

The defendant also claims that the court violated his state and federal constitutional rights by sentencing him based on an inference of a lack of remorse improperly

drawn from his having remained silent throughout the proceeding. We disagree.

On November 20, 2007, the court commenced the dispositional phase of the revocation hearing. After hearing testimony from David Carter, the defendant's Connecticut probation officer, as well as Eric Goldsmith, a forensic psychiatrist, the court revoked the defendant's probation and sentenced him to serve six years of incarceration, execution suspended after thirty-nine months, followed by ten years probation with special conditions. During its oral decision, the court stated to the defendant: "I gave you your chance . . . and you've never [taken responsibility for your actions] and you had numerous opportunities to do that going back to 1997, with the offenses there, with the offenses here, and all along the way through probation. And it was pointed out—and I think appropriately so— by [the state], as I looked at the offender's attitude in your 1997 presentence investigation, and it was one of total and complete denial, as it is here today, one of total and complete denial."

In his corrected motion for a new trial, the defendant argued that the court "wrongfully inferred that [he] had no remorse for his actions in 1996 because he chose not to testify" at his probation revocation hearing. Specifically, the defendant claimed that "[f]or the [c]ourt to state that [he] did not have remorse for his action . . . merely because he did not make a statement prior to sentencing is a violation of [his] constitutional right[s]" that materially prejudiced him. On December 20, 2007, the court held a hearing on the defendant's corrected motion for a new trial during which it addressed this claim. The court stated: "[L]et me be very clear that when I imposed the sentence upon [the defendant], the sentence that I imposed, in no way, shape or form, was reflective of the fact that [the defendant] being within his rights not to make a statement

at sentencing if he chose not to—he chose not to. He was within his rights. I absolutely agree with that, that he is within his rights not to say anything if he chooses not to. . . . So, I want it to be perfectly clear that I agree that he was within his rights, but I also think it should be absolutely clear—if it wasn't then . . . it should be now—that the sentence I imposed had nothing to do with the fact that he chose not to make a statement at sentencing. The sentence that I imposed was based upon a number of other [factors] with regard to the terms of his probation—which he violated—[and] the length of time he owed on his probation." The court subsequently orally denied the defendant's motion for a new trial. On appeal, the defendant argues that in sentencing him, the court improperly relied on the inference that he lacked remorse because it cited no evidentiary basis, other than his silence at the hearing, from which it could infer that he lacked remorse, and, therefore, it violated his rights under the federal and state constitutions.[10]

As a general matter, a trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters in revocation of probation hearings. See *State* v. *Mapp*, 118 Conn. App. 470, 984 A.2d 108 (2009), cert. denied, 295 Conn. 903, 988 A.2d 879 (2010). On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused. See *State* v. *Daniels*, 248 Conn. 64, 73, 726 A.2d 520 (1999). The fifth amendment to the United States constitution by its terms precludes a person from being "compelled in any criminal case to be a witness against

---

[10] Although the defendant asserts that the court's actions violated both the state and federal constitutions, he has failed to provide the analysis required by *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), that is a prerequisite to asserting an independent claim under the state constitution. See *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 567–68, 964 A.2d 1213 (2009) (refusing to address plaintiff's state constitutional claim where plaintiff failed to provide *Geisler* analysis). We therefore limit our analysis to the defendant's claim under the federal constitution.

himself . . . ." "The fifth amendment privilege against self-incrimination not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." (Internal quotation marks omitted.) *Olin Corp.* v. *Castells*, 180 Conn. 49, 53, 428 A.2d 319 (1980). "The privilege against self-incrimination also carries with it the added benefit that no adverse inference may be drawn against the accused in any criminal proceeding from the accused's invocation of the privilege." *In re Samantha C.*, 268 Conn. 614, 635, 847 A.2d 883 (2004). That benefit, that no adverse inference may be drawn by the invocation of the privilege, extends to sentencing hearings as well. See *Mitchell* v. *United States*, 526 U.S. 314, 326, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) (only where sentence fixed and judgment of conviction final is there no basis for assertion of fifth amendment privilege against self-incrimination). Cf. *State* v. *Kelly*, 256 Conn. 23, 80, 770 A.2d 908 (2001) ("[a]ugmentation of sentence based on a defendant's decision to stand on [his or her] right to put the [state] to its proof rather than plead guilty is clearly improper" [internal quotation marks omitted]). Furthermore, a determination of whether the court sentenced the defendant on the basis of an adverse inference improperly drawn because of his invocation of the privilege should be based on the totality of the circumstances. Cf. id., 82 (review of claims that trial court lengthened sentence as punishment for exercising constitutional right to jury trial should be based on totality of circumstances).

At the time of sentencing, the court provided a lengthy and detailed analysis of its reasoning behind

imposing the sentence that it did. During that discussion, the court pointed to several factors that supported its reasoning. The court first underscored that probation was not a right but a privilege for the defendant to remain incarcerated for less than the full duration of the sentence imposed. The court stated that the privilege of probation, in essence, was based on the expectation that the defendant would abide by the conditions of his probation, including, in part, engaging in rehabilitative treatment. The court indicated its awareness of the progress that the defendant had made in adhering to the conditions of probation and engaging in rehabilitative treatment, noting that he had been downgraded to a less intensive level of supervision because he had been deemed in compliance with the conditions of his probation since his release from prison. The court, however, noted that the defendant's compliance with the terms of his probation, as well as his progress, were not the only factors to be assessed in determining how best to protect society from him while aiding him in his rehabilitation. The court stressed its need, in imposing its sentence, to balance both the punitive and rehabilitative aspects of that sentence with the need to protect society from future harm. The court then concluded that the defendant had neglected to address properly the "sexually deviant urges" that led him to commit the acts that culminated in his arrest in New York. It also stated that the neglect exhibited by the defendant led directly to the acts and that that circumstance was relevant to sentencing. The court then asserted that an overarching concern in fashioning an appropriate sentence was, in light of the acts committed, its desire to protect society from such further acts of the defendant for as long as possible under the circumstances and within its mandate.[11] In so doing, the

---

[11] See *State* v. *Hedge*, 89 Conn. App. 348, 351, 873 A.2d 254 ("In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and

court eschewed Carter's recommendation that the defendant be incarcerated for the remaining six years of the 1997 sentence. The court expressed its desire to fashion a sentence that would extend supervision over the defendant by imposing a lesser time of incarceration along with a period of probation, thereby imposing a sentence that conforms with the considerations of punishment, deterrence and rehabilitation. The court then expressed its concerns that the defendant was not amenable to rehabilitation and made the comments noted previously that the defendant complains on appeal violated his rights under the federal constitution.[12]

On the basis of our review of the record, we conclude that the totality of the circumstances surrounding the defendant's sentencing gives no indication that the court improperly augmented the defendant's sentence on the basis of his decision to exercise his privilege to remain silent throughout the revocation hearing. See *State* v. *Kelly*, supra, 256 Conn. 82. As the court noted during its sentencing of the defendant, it gave particular consideration to both punishment and deterrence, as well as the rehabilitation of the defendant. Its comments during the sentencing about its concerns over the prospect of the defendant's rehabilitation, as expressed by the court at that time, in large part, were centered around the defendant's apparent denial as to the incidents that led to his 1997 conviction, which were reflected in the evidence before the court. Moreover,

---

rehabilitation must be balanced, however, against the need to protect the public." [Internal quotation marks omitted.]), cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

[12] Those comments were: "I gave you your chance . . . and you've never done that, and you had numerous opportunities to do that going back to 1997, with the offenses there, with the offenses here, and all along the way through probation. And it was pointed out—and I think appropriately so—by [the state], as I looked at the offender's attitude in your 1997 presentence investigation, and it was one of total and complete denial, as it is here today, one of total and complete denial."

in addressing the defendant's concerns raised in his corrected motion for a new trial, the court clarified that the imposition of the sentence on the defendant was "in no way, shape or form" influenced by the defendant's remaining silent through the hearing. Although the defendant asserts that the court's comments made on December 20, 2007, addressing the defendant's sentencing were a "patently inappropriate attempt to salvage its unconstitutional remarks," we conclude that they are inherently part of the totality of the circumstances that we are required to review when addressing a claim that a trial court lengthened a sentence as punishment for exercising a constitutional right. Cf. *Johnson* v. *Rell*, 119 Conn. App. 730, 733 n.3, 990 A.2d 354 (2010) ("[t]he purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal" [internal quotation marks omitted]); see also *Perugini* v. *Devino*, 111 Conn. App. 436, 443, 959 A.2d 1031 (2008) (purpose of clarification is to take prior statement, decision or order and make it easier to understand.) As a result, we conclude that the court did not impermissibly augment the defendant's sentence for exercising his privilege to remain silent during the revocation hearing. Therefore this claim fails.

## IV

Last, the defendant claims the court exceeded its authority in sentencing him to serve six years incarceration, execution suspended after thirty-nine months, followed by ten years probation with special conditions. Specifically, the defendant argues that the court abused its discretion in imposing a sentence to serve thirty-nine months incarceration because it did not fairly reflect the seriousness of the violation of probation. This is so because the underlying criminal conduct that led to the revocation of his probation was punishable by a maximum sentence of ninety days. We disagree.

We note that "[t]he element of 'punishment' in proba-tion revocation of [the] defendant is attributable to the crime for which he was originally convicted and sen-tenced. Thus, any sentence [the] defendant had to serve as the result of the [probation] violation . . . was 'pun-ishment' for the crime of which he had originally been convicted. Revocation is a continuing consequence of the original conviction from which probation was granted." *State* v. *Smith*, 207 Conn. 152, 178, 540 A.2d 679 (1988). Accordingly, the defendant's argument is misplaced because the thirty-nine month sentence is punishment for the criminal conduct that led to his 1997 conviction. As the state properly recognizes, a challenge to the length of the sentence should be made through the sentence review process under General Statutes § 51-195.[13]

Insofar as the defendant claims that the court abused its discretion in concluding that the rehabilitative and beneficial aspects of probation were not being met, we conclude that this argument lacks merit. We conclude that on the basis of the whole record, the court properly considered whether the beneficial aspects of probation were being served and, therefore, did not abuse its discretion by revoking the defendant's probation and reinstating the remainder of the defendant's original sentence. See part III of this opinion; see also *State* v. *Hedge*, 89 Conn. App. 348, 351, 873 A.2d 254, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005). This claim, accordingly, fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The defendant also claims that because the court sentenced him to serve thirty-nine months incarceration and not the full six years of his remaining sentence left not served, thereby reinstating the remainder of his original sentence, the court abused its discretion. Because in a revocation of probation hearing a "court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or *impose any lesser sentence*"; (emphasis added; internal quota-tion marks omitted) *State* v. *Mapp*, supra, 118 Conn. App. 478; this claim has no merit.