STATE OF CONNECTICUT *v.* ANTHONY W. OLIPHANT
(AC 29362)

Gruendel, Harper and Foti, Js.

Argued April 13—officially released July 7, 2009

*Laljeebhai R. Patel,* for the appellant (defendant).

*Melissa L. Streeto,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Joseph R. LaMotta,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Anthony W. Oliphant, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction for six and one-half years. The defendant claims that the court improperly (1) restricted his cross-examination of the complaining witness, (2) refused to apply the exclusionary rule, (3) concluded that the evidence was sufficient to determine that he had violated his probation and (4) revoked his probation. We affirm the judgment of the trial court.

At the outset, we must consider whether there is an adequate record for review. An adequate record usually includes either a memorandum of decision or a transcript signed by the trial judge. Practice Book § 64-1. Also, the appellant is responsible for providing such to this court. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998); Practice Book § 61-10. The defendant did not provide this court with either a memorandum of decision or a signed transcript. He did provide, however, an unsigned transcript of the proceeding. "On occasion, we will entertain appellate review of an unsigned transcript when it sufficiently states the court's findings and conclusions." *In re Anthony E.*, 96 Conn. App. 414, 417, 900 A.2d 594, cert. denied, 280 Conn. 914, 908 A.2d 535 (2006). We have reviewed the transcript of this case and conclude that it provides an adequate record for our review.

On September 1, 1995, the defendant was sentenced for a conviction of larceny in the first degree to fifteen years incarceration, execution suspended after seven years, followed by five years probation.[1] The defendant's probation commenced on August 30, 2002, subsequent to his release from prison. In the early hours of

---

[1] In the defendant's direct appeal, this court affirmed the conviction. See *State* v. *Oliphant*, 47 Conn. App. 271, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

September 25, 2006, Robert Villano, a Hamden police officer, responded to a report of an assault on Rhonda Dixon, who was, at the time, the defendant's girlfriend. Villano met Dixon at the Ebony Lounge and took a signed statement from her about the assault. She alleged that the defendant physically attacked her at his residence after he accused her of stealing his wallet and became enraged. Villano referred the victim to a hospital for treatment of the injuries she sustained to her right eye from the assault. Subsequently, Villano secured an arrest warrant for the defendant on a charge of assault in the third degree.

On October 6, 2006, at approximately 5:30 p.m., Mark Sheppard, a Hamden police officer, went to the defendant's residence, 130 Cherry Ann Street, New Haven, to effectuate an arrest.[2] Sheppard, dressed in his police uniform, was driving in an unmarked police vehicle and had with him a photograph of the defendant. Sheppard did not see the defendant's vehicle, a red Ford Escort, in the driveway. He parked on the street in front of the defendant's residence and waited in his vehicle to see if the defendant returned. Sheppard soon saw the defendant's vehicle driving down Cherry Ann Street toward his residence. Sheppard recognized the defendant as the driver of the vehicle as it passed him and turned into the driveway of 130 Cherry Ann Street. Sheppard radioed for assistance, then drove his vehicle into the driveway, exited and approached the passenger's side of the defendant's vehicle. Through the open window, Sheppard informed the defendant that there was a warrant for his arrest and asked that he turn off the motor

[2] According to the testimony provided to the court, Cherry Ann Street is located in both New Haven and Hamden. Moreover, the testimony revealed that the defendant's residence is directly adjacent to the boundary between New Haven and Hamden. The court found that each officer reasonably believed that the defendant's residence was located in Hamden when they attempted to arrest him on October 6, 2006.

and step out of the vehicle. The defendant was non-compliant, became verbally abusive toward Sheppard and reached into his waistband. Sheppard unholstered his gun, pointed it at the defendant and directed him to put his hands on the steering wheel. The defendant still did not comply with Sheppard, rolled up his windows, placed the car into gear and backed up several feet onto the lawn of his residence. Because the defendant's car windows were tinted, Sheppard broke the passenger window with his baton so as to keep the defendant visible and, again, directed the defendant to turn the motor off. William Onofrio, a Hamden police officer, arrived soon after at the scene to assist Sheppard.

Onofrio opened the driver's side door of the vehicle, at which time the defendant exited the vehicle. The defendant complied initially with the directive to lie face down on the ground, and Onofrio attempted to handcuff him. Onofrio managed to secure only the defendant's right wrist with the handcuff when he became noncompliant and combative with the officers. Sheppard used his Taser gun on the defendant to no effect.[3] The defendant then stood up and struck Onofrio on the head with the unsecured handcuff. The defendant remained combative and nonresponsive to the officers' directives. Sheppard then fired his Taser gun at the defendant, but the defendant removed the probes from his chest before Sheppard could deliver an electric charge. The defendant then ran toward a wooded area behind his house. Onofrio and Sheppard pursued him and repeatedly directed the defendant to cease resisting their efforts to arrest him. The defendant picked up a large tree branch,[4] held it like a baseball bat and threatened the officers. Sheppard and Onofrio trained their

---

[3] Sheppard testified that in this application of the Taser gun, he "delivered one cycle from his department issued Taser in a drive stun capacity, which is when the probes aren't used."

[4] Sheppard testified that the branch was approximately fifty-three and one-half inches long and about one and three-quarter inches in diameter.

weapons on the defendant and ordered him to drop the branch. The defendant took several steps toward the officers before relinquishing the branch. He then ran back toward the residence. The officers pursued the defendant and attempted to restrain him as he continued to resist their efforts and to punch the officers. It was not until two more police officers arrived at the scene and assisted Sheppard and Onofrio that the defendant was fully handcuffed and in police custody.

A violation of probation hearing was held, after which the court revoked the defendant's probation on the basis of the evidence presented and committed him to the custody of the commissioner of correction for six and one-half years. In its oral ruling after the adjudicative phase of the hearing, the court found that the state had presented reliable and probative evidence and had proven by a preponderance of the evidence that the defendant had violated his probation by committing the crime of assault in the third degree for his attack on Dixon on September 25, 2006. The court also found that the defendant had committed the crimes of assault in the second degree, interfering with an officer and threatening for his actions on October 6, 2006, when Sheppard and Onofrio attempted to effectuate his arrest. The court found that the defendant had violated the standard condition of his probation that he not violate any criminal law of the United States, this state or any other state or territory. The court then conducted the dispositional phase of the hearing and determined that the beneficial aspects of probation were no longer being served. The court revoked the defendant's probation and sentenced the defendant to serve six and one-half years incarceration. This appeal followed. Further facts will be set forth as necessary.

I

The defendant first claims that the court improperly restricted his cross-examination of the complaining witness. Specifically, the defendant argues that the court

abused its discretion in not allowing him to recall the complaining witness for further cross-examination.[5] We disagree.

The following additional facts are relevant to the defendant's claim. Initially, the defendant was represented at the hearing by attorney Omar Williams. On September 24, 2007, Williams cross-examined Dixon, the complaining witness for the September 25, 2006 incident. On September 28, 2007, the defendant requested that the court allow him to represent himself. The court found, after an extensive canvass of the defendant, that he was competent to waive counsel and that his waiver was knowing, intelligent and voluntary. The court also appointed Williams as standby counsel. Soon after, the defendant conducted the cross-examination of Villano. During the cross-examination, the defendant questioned Villano about the fact that both his report detailing the incidents of September 25, 2006, and his affidavit in support of the arrest warrant for the

---

[5] The defendant also claims that the court's ruling deprived him of his right to confront the witnesses against him under the federal and state constitutions. We note that a " '[r]evocation of [probation] is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to [probation] revocations.' *Morrissey* v. *Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)." *State* v. *Young*, 63 Conn. App. 794, 799–800, 778 A.2d 1015, cert. denied, 258 Conn. 903, 782 A.2d 140 (2001).

The defendant does not provide any legal basis or analysis from which we could conclude whether his rights under the federal or state constitution were implicated under the court's ruling. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Papic* v. *Burke*, 113 Conn. App. 198, 222, 965 A.2d 633 (2009). Moreover, at trial, the defendant objected to the court's ruling solely on evidentiary grounds and has not argued on appeal, under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or otherwise, that he is entitled to extraordinary review of an unpreserved, alleged constitutional claim. See *State* v. *Longo*, 106 Conn. App. 701, 709, 943 A.2d 488 (2008) (appellate court will not engage in level of review not requested). We, therefore, decline to review this separate claim.

defendant, stated that Dixon ran from the defendant's home to the Ebony Lounge after the assault.[6]

On October 22, 2007, during his case–in–chief, the defendant sought to recall Dixon as a witness. The court noted that the witness had already been subject to direct and cross–examination. The state objected and requested that the court require the defendant to make an offer of proof to establish a valid reason for his recalling Dixon.[7] The court then recessed to allow the defendant to confer with standby counsel to prepare an offer of proof.[8] After the court reconvened, the defendant, essentially, stated that he wanted to recall her for two reasons: (1) to impeach her through her past conduct that revealed her to be a self-destructive "serial sexual predator" and (2) to explore apparent discrepancies between her testimony and Villano's affidavit in support of the defendant's arrest warrant as well as an affidavit Dixon signed in support of her request for a protective order. The court sustained the state's objection to the defendant's request to recall Dixon. Citing

[6] On September 24, 2007, Dixon testified that she had driven to the Ebony Lounge from the defendant's home after the assault.

[7] Specifically, the state requested that "the [defendant] provide an offer of proof regarding what extra evidence [that] hasn't been covered in the direct and cross that will come out [and] that's admissible, addresses the issues and the legal grounds under which it would be admissible. [The state] did, for the purposes of this offer of proof, obtain a transcript of . . . Dixon's testimony. [The state has] a copy for [standby] counsel and [the defendant]."

[8] The court stated: "Okay . . . what I'm going to do is this. I'm going to give you some time now, fifteen minutes, to discuss with [your standby counsel] since [the witness] is, for want of a better word, a complaining witness, what it is exactly that you want to ask her that is in any way different than what was already covered [on] direct and cross–examination . . . because there's got to be a basis upon which I'm going to permit you to again have her up here, when she's already been subject to cross–examination, to go through that again.

"Now, if there's some other—other areas that haven't been covered, that's one thing. I'll hear you on that, but to simply have her up there and go through the entire thing all over again without hearing any—a basis for that, I will consider [the state's] claim."

*State* v. *Lambert*, 58 Conn. App. 349, 754 A.2d 182, cert. denied, 254 Conn. 915, 759 A.2d 507 (2000), the court ruled that the defendant was not allowed to impeach Dixon with conduct that was merely illustrative of general bad behavior because it was not relevant to her credibility. The court also ruled that the apparent discrepancies alluded to by the defendant were covered extensively by Williams during his cross-examination of Dixon. Moreover, the court concluded, not only had Dixon been subjected to cross-examination that adequately demonstrated any possible motive, interest or bias on her part, but the defendant also presented extensive testimony that supported his contentions involving her credibility.

"The trial court has broad discretion in determining whether to permit a witness to be recalled. . . . In determining whether the trial court abused its discretion, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Wegman*, 70 Conn. App. 171–72, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). "Reversal is required only where an injustice appears to have occurred. . . . To establish an abuse of discretion, it must be shown that restrictions imposed on cross–examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Lewis*, 25 Conn. App. 354, 360, 594 A.2d 489, cert. denied, 220 Conn. 914, 597 A.2d 336 (1991); see also *State* v. *Price*, 61 Conn. App. 417, 429, 767 A.2d 107, cert. denied, 255 Conn. 947, 769 A.2d 64 (2001); *State* v. *Oliver*, 41 Conn. App. 139, 145, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). Applying these principles to the present matter, we are not persuaded that the court abused its discretion.

We note first that the lengths to which the court went in an effort to accommodate the defendant's response to the state's objection to recalling the complaining

witness, and throughout the hearing, were considerable. The court gave ample time for the defendant to confer with standby counsel concerning the matter and was solicitous in considering his offer of proof. The court also gave a reasoned response to the defendant's offer of proof that was supported by relevant and sound decisional law and our rules of evidence. Moreover, the court concluded appropriately that Dixon was subjected to a thorough cross-examination by Williams that served the appropriate function of cross-examination— the exposure of Dixon's potential motive, interest, bias or prejudice. See *State* v. *DeJesus*, 270 Conn. 826, 835, 856 A.2d 345 (2004). On the basis of the record before us, we conclude that the restrictions placed on the defendant were not clearly prejudicial, and, therefore, the court did not abuse its discretion.

## II

The defendant next claims that the court improperly refused to apply the exclusionary rule. This court, however, recently has stated that under our Supreme Court's reasoning in *Payne* v. *Robinson*, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), the exclusionary rule does not apply to probation revocation hearings. *State* v. *Moore*, 112 Conn. App. 569, 578, 963 A.2d 1019, cert. denied, 291 Conn. 905, 967 A.2d 1221 (2009). The defendant's claim, therefore, must fail.

## III

The defendant next claims that the court improperly concluded that the evidence was sufficient to determine that he had violated his probation. We disagree.

"[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether

the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Citation omitted; internal quotation marks omitted.) *State* v. *Bouteiller*, 112 Conn. App. 40, 51, 961 A.2d 995 (2009). "[A] trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002). "A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003).

During the adjudicatory phase of the hearing, the court heard considerable testimony from Dixon, Villano, Sheppard, the defendant, the defendant's neighbors and the defendant's mother, among others concerning the events of September 25 and October 6, 2006, after which it set forth its findings. It found, in relevant part, that the defendant physically attacked Dixon on September 25, 2006. It further found that the defendant, on October 6, 2006, repeatedly failed to comply with police directives, struck both Onofrio and Sheppard, menaced them with a tree branch and repeatedly struggled with the officers. We have thoroughly reviewed the record, and it amply supports the court's factual findings. The defendant does not claim that those findings, if reasonable, were insufficient to support the finding that he violated his probation. On appeal, the defendant argues that the court erred in crediting the testimony of Dixon and Sheppard and not crediting his testimony or that of his neighbors. Although the defendant couches his argument in terms of insufficiency of the evidence, he confuses the issues of sufficiency and credibility. "As the sole finder of fact in the probation revocation proceeding, however, the court was entitled to arrive at its own conclusion regarding the witnesses' credibility and what weight to afford their testimony." *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). Because the weight to be given to the credibility of a witness is within the sole province of the trier of fact and will not be reviewed on appeal; *Sanders* v. *Dias*, 108 Conn. App. 283, 294, 947 A.2d 1026 (2008); we cannot say that the court's decision was clearly erroneous.

We conclude, therefore, that the court had before it sufficient evidence to support its finding, by a fair preponderance of the evidence, that the defendant committed the crimes of assault in the third degree, assault in the second degree, threatening and interfering with

an officer. Accordingly, the court properly found that the defendant had violated his probation.

## IV

Last, the defendant claims that the court improperly revoked his probation. Specifically, he argues that the evidence produced did not support the court's finding that the rehabilitative purpose of probation could not be fulfilled. We disagree.

We have stated that "[i]f a violation [of probation] is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Bouteiller*, supra, 112 Conn. App. 53. "Our determination of whether the trial court abused its discretion in revoking the defendant's probation is guided by the following principles. We previously have recognized that [t]o a greater or lesser degree, it is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . .

"A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full

sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 105, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

Our review of the record reveals that the court did not abuse its discretion in revoking the defendant's probation. Specifically, we conclude that the court properly considered whether the beneficial aspects of probation were being served. We note that the court took into consideration the favorable testimony of the defendant's sister, the fact that the defendant had, in the time he was on probation, secured gainful employment, attended college and paid restitution. It also considered the defendant's extensive criminal history, the fact that he previously had violated his probation, the violent nature of the incidents that led to the revocation hearing and his demonstrated lack of remorse about those incidents. It then found that the beneficial aspects of probation were no longer being served and revoked the defendant's probation. Because the court was entrusted with the decision as to whether the defendant was meeting the goals of his probation and we must afford every reasonable presumption in favor of the correctness of that decision; see *State* v. *Bouteiller*, supra, 112 Conn. App. 56; on the basis of the record before us, we cannot say that it abused its discretion in finding that the rehabilitative purpose of probation could no longer be served. The court, therefore, did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other judges concurred.