STATE OF CONNECTICUT *v.* SAMUEL HOOKS
(AC 23208)

Lavery, C. J., and McLachlan and Dupont, Js.

Argued September 11—officially released October 28, 2003

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Samuel Hooks, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction for two and one-half years. On appeal, the defendant claims that the court (1) denied him his rights to due process of law by failing to provide notice as to the manner in which he violated the conditions of probation, (2) improperly found him to be in violation of probation because there was insufficient evidence of a violation, (3) abused its discretion by failing to consider the beneficial purposes of probation and (4) improperly restricted his constitutional

right of allocution during sentencing. We affirm the judgment of the trial court.

The relevant facts adduced at the probation revocation hearing are as follows. On April 20, 1995, the defendant pleaded guilty to carrying a pistol without a permit in violation of General Statutes § 29-35. The court sentenced him to five years imprisonment, execution suspended after two and one-half years, and three years probation. On October 16, 1997, the defendant was discharged from custody and his probation commenced. The conditions of probation required the defendant to refrain from violating any criminal law.[1]

Officer Dean Reynolds of the New Haven police department testified that on October 29, 1999, he was patrolling Dixwell Avenue when he saw two individuals on a street corner engaged in what he "believed to be a hand-to-hand narcotics transaction." Reynolds testified that he saw the defendant put a clear plastic bag in his pants pocket. The defendant saw Reynolds and "took off on his bike . . . riding at a high rate of speed . . . looking over his shoulder to see if [Reynolds] was in pursuit." Reynolds yelled for the defendant to stop, but he did not.

The defendant rode his bike to the rear of the house at 221 Henry Street, then got off it and ran away. The pursuit continued and Reynolds caught him. The defendant wrestled Reynolds to the ground, punched him in the stomach three times and attempted to choke him. The defendant eventually broke free and ran to the house at 221 Henry Street; Reynolds reached him as he closed the front door. The defendant repeatedly closed the door on Reynolds, smashing his arm from the

---

[1] See General Statutes § 53a-30 (a) (7). Moreover, "[a]n inherent condition of any probation is that the probationer not commit further violations of the criminal law while on probation." *State* v. *Lewis,* 58 Conn. App. 153, 157–58, 752 A.2d 1144, cert. denied, 254 Conn. 917, 759 A.2d 508 (2000).

"elbow down to [the] fingers . . . ." Aided by other officers, Reynolds finally removed the defendant from behind the door. Still resisting, the defendant "was violently trying to hit" the officers with "a closed fist"; one punch struck Reynolds in the chin. Reynolds testified that this punch "caused [him] pain and discomfort for a couple of minutes."

The defendant was subdued and placed under arrest. A search incident to the arrest revealed "a little plastic baggie with some kind of wet substance in it" in one of his pockets. The substance was turned over to the state toxicology laboratory for analysis, which confirmed that it was phencyclidine. An arrest warrant for violation of probation was issued on the application of a probation officer. The defendant was arrested on December 8, 1999, and charged with a violation of his probation on the basis of the probation officer's affidavit, which indicated that the defendant had failed to comply with the probation requirement not to violate any criminal laws and had been arrested on charges of possession of a controlled substance, possession of a controlled substance within 1500 feet of a school, assaulting a police officer and interfering with police.

At the probation revocation hearing, the court found, by a preponderance of the evidence, that the defendant had assaulted a police officer and illegally possessed a controlled substance, thereby violating the statutory condition of his probation.[2] The defendant offered no evidence in his behalf. In his allocution, he insisted that the charges were false, as was the entire testimony of Reynolds. The court revoked the defendant's probation and sentenced him to serve the two and one-half years in custody that had been suspended. This appeal followed.

[2] The court made no express finding on the charge of interfering with police.

"In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance of the evidence that the defendant violated the terms of his probation. . . . This court may reverse the trial court's finding that a defendant violated the terms of his probation only if such finding is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Verdolini*, 76 Conn. App. 466, 468, 819 A.2d 901 (2003).

I

The defendant first claims that he was denied his rights to due process of law because the state failed to follow certain statutory requirements in charging him with violation of probation. Specifically, he contends that the state never provided notice as to the manner in which he violated the conditions of probation, as mandated by General Statutes § 53a-32 (a).[3]

In *State* v. *Pierce*, 64 Conn. App. 208, 214, 779 A.2d 233 (2001), the defendant argued that he had not received notice of any basis for the revocation of his probation beyond the specified charges. This court stated that at the defendant's violation hearing, "testimony was offered concerning the entire incident, and, thus, the defendant was made aware, both before and during the hearing, of the evidence [in support of the charges]." Id., 215. This court concluded that recitation of the

[3] General Statutes § 53a-32 (a), in relevant part, mandates that "upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge . . . ."

particular charges, both before and during the hearing, was sufficient notice to the defendant. Id. In addition, "[w]here criminal activity forms the basis for the revocation of probation, the law imputes to the probationer the knowledge that further criminal transgressions will result in a condition violation and the due process notice requirement is similarly met." *State* v. *Reilly*, 60 Conn. App. 716, 728, 760 A.2d 1001 (2000).[4]

In this case, the condition of the defendant's probation was that he would not violate any criminal law; the manner in which he violated that condition was through the commission of criminal offenses. Section 53a-32 (a) requires the state to inform the defendant of those charges once before the court. The arrest warrant application, dated November 24, 1999, specified the condition of probation and the particular charges that formed the basis of the charge of violation of probation. At both the defendant's arraignment on December 8, 1999, and the probation revocation hearing on June 18, 2001, the state reiterated those charges. Those recitations satisfied the demands of § 53a-32 (a). We therefore conclude that, as the state complied with the specified statutory requirements in charging the defendant with violation of probation, his due process rights were not denied.

II

The defendant next claims that there was insufficient evidence to support a violation of the conditions of probation. A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. See *Aubin* v. *Miller*, 64 Conn. App. 781, 796, 781 A.2d 396 (2001). A court's finding of fact is clearly erroneous and its

---

[4] In his allocution, the defendant conceded that he knew he "wasn't supposed to get arrested . . . ."

conclusions drawn from that finding lack sufficient evidence "when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Azia* v. *DiLascia*, 64 Conn. App. 540, 558, 780 A.2d 992, cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001).

## A

The defendant first argues that there was insufficient evidence to support the court's finding that he assaulted an officer. The record reveals that on October 29, 1999, the defendant (1) wrestled an officer to the ground as the officer was attempting to handcuff the defendant, (2) punched the officer in the stomach three times, (3) attempted to choke the officer, (4) repeatedly closed a door on the officer's arm and (5) punched the officer in the chin with a closed fist. In neither the revocation hearings nor the oral argument before this court or in his submitted brief does the defendant deny having made such physical contact with the officer. Rather, the defendant, on appeal, argues that the pain element of assault was not proven.

General Statutes § 53a-167c, in relevant part, requires a showing that the defendant, "with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties . . . causes physical injury to such peace officer . . . ." General Statutes § 53a-3 (3) defines physical injury as "impairment of physical condition or pain . . . ."

Reynolds testified at the revocation hearing that the punch to the chin "caused [him] pain and discomfort for a couple of minutes." The defendant maintains that

this testimony effectively was impeached when the officer conceded that he never sought medical treatment, had not listed himself as a victim in the police report or initiated an injury investigation and had not missed any subsequent time from work. Thus, the defendant maintains that Reynolds' testimony was both unreliable and insufficient to support a finding that an assault occurred.

The weight to be given the evidence and the credibility of witnesses, however, "are solely within the determination of the trier of fact." *State* v. *Rollins*, 51 Conn. App. 478, 485, 723 A.2d 817 (1999). Having heard both the officer's testimony and the defendant's cross-examination, the court issued its ruling:

"I will also make a finding that during the course of the officer's legitimate duties, he was assaulted by the defendant, and I have reviewed the statute as far as assault on a police officer is concerned. It does require physical injury, not serious physical injury. Physical injury is pain. The officer's definition of injury may be different than the statutory definition. Certainly, his testimony here today established that there was physical injury in accordance with the statute." The evidence clearly supports the court's finding that the defendant engaged in conduct that constituted assault under § 53a-167c.

"In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." *Payne* v. *Robinson*, 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). A finding of the commission of a criminal act is sufficient to support a revocation of probation. Id. Thus, the court's finding that the defen-

dant assaulted an officer is sufficient to support the revocation of probation.

## B

The defendant also argues that there was insufficient evidence to support the court's finding that he illegally had possessed the narcotic phencyclidine in violation of General Statutes § 21a-279 (a).[5] Specifically, the defendant contends that the evidence before the court was insufficient because the state never introduced the PCP into evidence and failed to establish an adequate chain of custody between the narcotic and the defendant. We disagree.

Contrary to the defendant's assertions, the state is not required to produce the narcotic as evidence. In *State* v. *Cosgrove*, 181 Conn. 562, 585–86, 436 A.2d 33 (1980), our Supreme Court held that possession may be established by adequate circumstantial evidence, such as toxicological reports and testimony by toxicologists and police officers. Here, the court was presented with such evidence. Carol Hassett, a toxicologist, testified; her report was admitted into evidence. Reynolds testified that he observed the hand-to-hand transaction that precipitated the events of October 29, 1999.

Hassett and Reynolds testified as to the following events. Reynolds testified that during a search incident to the defendant's arrest, "a little plastic baggie with some kind of wet substance in it" was found in one of the defendant's pockets. Police case number 68403 was assigned to that evidence, which then was turned over to the state's toxicology laboratory for analysis. Hassett's testimony that number 68403 was assigned at the laboratory, and her description of the substance matched that of Reynolds. Her testimony and the toxicology report confirmed that the substance was phency-

[5] We note that as the condition of probation required the defendant to refrain from violating *any* criminal law, our determination in part II A provides an adequate basis to affirm the judgment revoking probation.

clidine. The report also named the defendant as the source of the substance.

"The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law. . . . In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." (Citations omitted; internal quotation marks omitted.) *State* v. *Rollins*, supra, 51 Conn. App. 484. In arriving at its decision, the court is entitled to draw reasonable and logical inferences from the evidence. *State* v. *Verdolini*, supra, 76 Conn. App. 469. The court had before it sufficient evidence to support its finding, by a fair preponderance, that the defendant illegally had possessed phencyclidine. The court's finding was not clearly erroneous.

## III

The defendant next claims that the court abused its discretion by failing to consider the beneficial purposes of probation. We disagree.

Once the court found that the terms of probation were violated and revoked the defendant's probation, impliedly, the court found that the beneficial purposes of probation no longer were being served. See *State* v. *Carey*, 228 Conn. 487, 495, 636 A.2d 840 (1994). Thus, the court impliedly evaluated whether the beneficial purposes of probation no longer were being served and concluded by implication that they were not.

"We review the sufficiency of the evidence to support this implied finding by determining whether the state provided sufficient evidence so that, had the trial court explicitly found that the beneficial purposes of probation were no longer being served, that is, [the defendant's] rehabilitation and the protection of society, were no longer being served . . . it would not have abused

its discretion. . . . In making this . . . determination, the trial court is vested with broad discretion." (Citations omitted; internal quotation marks omitted.) *State v. DeMasi*, 34 Conn. App. 46, 55, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994).

General Statutes § 53a-32 (b) provides in relevant part that revocation shall not be ordered "except upon consideration of the whole record . . . ." The record reveals that the defendant's underlying conviction was for possession of a pistol without a permit. He had been placed on probation on three separate occasions. Furthermore, the probation officer testified that "[m]y conclusion is [that he has] been very lucky to receive these periods of probation. . . . I believe he's a threat not only to himself, but to the community." Moreover, the court found, by a preponderance of the evidence, that the defendant had assaulted a police officer and illegally possessed a controlled substance. Those findings alone were sufficient to support the revocation of probation. Cf. *Payne* v. *Robinson*, supra, 10 Conn. App. 403. Upon review of the whole record, we conclude that the court's implied finding that the beneficial purposes of probation no longer were being served was not an abuse of its discretion.

## IV

The defendant's final claim is that the court improperly restricted his procedural right of allocution during sentencing in violation of Practice Book § 43-10 (3). We disagree.

The defendant requests that we review his unpreserved claim under the plain error doctrine.[6] See Prac-

---

[6] The defendant characterizes the right of allocution as constitutional. The right of allocution in Connecticut derives from a rule of practice. There is no Connecticut authority that has recognized a constitutional right of allocution. See *State* v. *Strickland*, 243 Conn. 339, 340 n.1, 703 A.2d 109 (1997).

tice Book § 60-5. "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McDuffie*, 51 Conn. App. 210, 216–17, 721 A.2d 142 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

A defendant possesses the procedural right to address the court personally at the time of sentencing in the dispositional phase of a probation revocation hearing if he requests to speak. See *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997); see also Practice Book § 43-10 (3). The court, however, has no affirmative duty to inquire of a defendant whether he wants to address the court personally. *State* v. *Valedon*, 261 Conn. 381, 383, 802 A.2d 836 (2002). In this case, the transcript indicates that the court provided the defendant with a fair opportunity to speak on his behalf and that he did so. Before imposing sentence, the court stated, "I want your client to have an opportunity to speak on his own behalf, if he wishes." The defendant then spoke and insisted that the charges were false, as was the entire testimony of Reynolds.[7] Only after the defendant's remarks did the court proceed to the sentencing phase of the hearing.

We conclude that the defendant's right to an allocution was not infringed by the court. To the contrary,

---

[7] The defendant stated: "I know I wasn't supposed to get arrested, but the rest—I mean, the rest of the allegations, they're not true. I understand that you, by a preponderance, you found me guilty, but, you know, for the crime that I committed back then, I paid my dues. Understand, I did finish my probation, I did finish my probation before, so it's like a one and one thing here, but all I could say is [that] the accusations that the cop made, they're all false. I mean, even at the hearing. Okay."

the defendant took advantage of the opportunity to speak that was provided to him. After careful review of the record, we conclude that the court's conduct did not affect the fairness or integrity of the proceedings, nor did it result in manifest injustice to the defendant. There is no plain error.

The judgment is affirmed.

In this opinion the other judges concurred.

