******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELGO, J., concurring. I agree with the majority's decision to affirm the judgment of the trial court. I write separately, however, because I believe the constitutional claim of the defendant, Anthony D. Orr, warrants deeper examination as to whether he received sufficient notice of the basis of the violation of probation proceeding prior to its commencement. In this appeal, the defendant contends that his right to due process was violated when the trial court found that he had violated certain criminal laws that were not alleged in either the violation of probation warrant or the accompanying affidavit. I agree with the defendant that this discrepancy offends basic constitutional principles of due process and thus satisfies the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). I nonetheless would conclude, under the particular facts of this case, that this constitutional violation was harmless under *Golding*'s fourth prong. I therefore respectfully concur with the majority's decision to affirm the judgment of the trial court.[1]

The following facts are relevant to my review of the defendant's due process claim. On August 27, 2014, the defendant was released from incarceration for his February 19, 2009 conviction of first degree robbery and began his five year term of probation. On September 4, 2014, the defendant agreed to conditions of probation that included, inter alia, that he (1) not violate any criminal law of this state, (2) submits to urine testing, and (3) reports to the Office of Adult Probation when directed to do so.

On October 6, 2016, the defendant was arrested and charged with possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (a), operation of a drug factory in violation of General Statutes § 21a-277 (c), interfering with a search in violation of General Statutes § 54-33d, possession of narcotics with intent to sell in violation of § 21a-278 (b), and possession of marijuana in violation of General Statutes § 21a-279 (a) (1). The defendant's probation officer, Timothy Fenn, thereafter applied for a violation of probation arrest warrant, in which he alleged that the defendant (1) failed to report to the Office of Adult Probation on August 11 and December 15, 2015, (2) provided a urine sample that tested positive for the presence of marijuana, and (3) violated the aforementioned criminal laws underlying his October 6, 2016 arrest. The defendant was arrested in November, 2016, and charged with violation of probation under General Statutes § 53a-32.

During the probation revocation proceedings, the state informed the court that, although it did not "intend to put on facts from [the drug] case," it was "not techni-

cally withdrawing" that portion of the violation of probation charge. The state represented that it was pursuing the charges that the defendant failed to report and that he provided a dirty urine sample (technical violations). The state, therefore, subsequently presented evidence that the defendant failed to keep eight appointments with the Office of Adult Probation when directed and provided a January 20, 2015 urine sample that tested positive for the presence of marijuana. In response, the defendant admitted to having used marijuana. The state thereafter rested, and the evidentiary stage of the proceeding concluded.

Upon reconvening from a recess, the court stated that, at that time, it "would be inclined to find that [the defendant] violated his probation, but I also would be disinclined to actually sentence him to any jail time." The court further explained that, "if this is the extent of the state's violation, this is not a five-years-to-serve violation. On the other hand, if I were convinced by a preponderance of the evidence that the defendant was committing crimes while he was on probation, then I would probably give him the maximum." The state responded that it intended to present evidence during the dispositional phase of the probation proceeding.[2] The court acknowledged that it was not aware of the details of the charges stemming from the defendant's October 6, 2016 arrest. It further explained that it would provide the state with leave to open the violation of probation hearing "if they wanted to include evidence of another crime." Senior Assistant State's Attorney Terence D. Mariani responded that, "given the court's comments," the defendant should make his witnesses available "to dispute the facts of the [case concerning the October 6, 2016 drug charges]." Mariani stated that, given the time and the court's comments, the state intended to present evidence concerning the defendant's October 6, 2016 arrest. The court thereafter granted the state's motion to open the evidentiary stage of the proceeding over the defendant's objection.

On June 16, 2017, the state presented evidence of the drug charges underlying the defendant's arrest on October 6, 2016. The defendant testified in his own defense and presented testimony from two witnesses. Following the close of evidence, the court found that the defendant had violated the condition of his probation that he report to the Office of Adult Probation. It further found that the defendant had violated the condition that he not violate any criminal laws. In making the latter finding, the court noted that, "in testing positive for marijuana, THC, there is circumstantial evidence that the defendant violated the law as far as possession of [a] controlled substance." The court also stated that, "the biggest finding I had here, though, is [that] I do find that the defendant has violated the criminal law . . . in regard to conspiracy to sell narcotics, § 53a—I want to say 48 . . . ." The court further found

that the defendant violated § 21a-277 (a) for conspiracy to possess with intent to sell and General Statutes § 21a-267 (a) for possession of drug paraphernalia.[3] The court thus revoked the defendant's probation and sentenced him to five years of incarceration.

On appeal, the defendant claims that his right to fair notice under the due process clause of the fourteenth amendment to the federal constitution was violated when the court found that he had violated criminal laws that were not cited in the violation of probation warrant. See *State* v. *Andaz*, 181 Conn. App. 228, 232–33, 186 A.3d 66, cert. denied, 329 Conn. 901, 184 A.3d 1214 (2018). In so arguing, the defendant emphasizes that the violation of probation warrant charged him with violations of §§ 21a-277 (c), 21a-278 (a) and (b), 21a-279 (a) (1) and 54-33d. The defendant essentially contends that the court was restricted to those alleged violations during the probation revocation proceeding. Because the court went beyond those violations and, instead, found violations of other criminal statutes— namely, §§ 21a-267 (a), 21a-277 (a) and 53a-48—the defendant submits that his fourteenth amendment right to fair notice was violated.

The majority sidesteps this thorny issue by disregarding the trial court's explicit findings with respect to §§ 21a-267 (a), 21a-277 (a) and 53a-48. Instead, because the violation of probation warrant also alleged a violation of § 21-279 (a), the majority concludes that the court properly found that the defendant violated that criminal law.[4] See part I of the majority opinion. While I do not disagree with that conclusion, I believe that the defendant's claim nevertheless merits fuller consideration and analysis. On the facts of this case, I respectfully would conclude that the defendant did not receive constitutionally adequate notice with respect to the court's finding that he violated §§ 21a-267 (a), 21a-277 (a) and 53a-48.[5]

"It is well established that [a] defendant is entitled to due process rights in a probation violation proceeding. Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty." (Internal quotation marks omitted.) *State* v. *Andaz*, supra, 181 Conn. App. 232–33. "[T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses

in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation." (Internal quotation marks omitted.) *State* v. *Tucker*, 179 Conn. App. 270, 280, 178 A.3d 1103, cert. denied, 328 Conn. 917, 180 A.3d 963 (2018). "Although the due process requirements in a probation revocation hearing are less demanding than those in a full criminal proceeding, they include the provision of written notice of the claimed violations to the defendant." (Footnote omitted; internal quotation marks omitted.) *State* v. *Andaz*, supra, 233.

Our courts have provided some, albeit not comprehensive, guidance for evaluating whether a probationer is afforded sufficient notice to pass constitutional muster. For instance, this court has stated that, when a defendant is charged on one ground, i.e., a no contact provision, the defendant cannot be found in violation of probation on other uncharged grounds, including criminal violations. See *State* v. *Carey*, 30 Conn. App. 346, 349, 620 A.2d 201 (1993) ("[b]ecause a defendant cannot be found in violation of probation on grounds other than those with which he is charged, we will disregard the [trial court's] second finding [which was that the defendant violated a criminal law as basis for the revocation of his probation]"), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994); see also *State* v. *Pierce*, 64 Conn. App. 208, 215, 779 A.2d 233 (2001) ("[t]he defendant rightly asserts that he cannot be found in violation of probation on grounds other than those with which he is charged").

This court also has concluded that, as in criminal proceedings, a defendant receives sufficient notice of the underlying charges when they are included in a substitute information before the proceedings begin. See *State* v. *Hooks*, 80 Conn. App. 75, 79–80, 832 A.2d 690 (defendant received sufficient notice because violation of probation warrant "specified the condition of probation *and the particular charges* that formed the basis of the charge of violation of probation" (emphasis added)), cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003); *State* v. *Repetti*, 60 Conn. App. 614, 618, 760 A.2d 964 (defendant received constitutionally sufficient notice where substitute information was filed before violation of probation hearing and specified particular criminal law defendant was found to have violated), cert. denied, 255 Conn. 923, 763 A.2d 1043 (2000).

Our courts have yet to directly address the question of whether a defendant is provided constitutionally sufficient notice when he or she is found to have violated particular criminal laws that were not alleged in the violation of probation warrant. Despite a lack of pointed discussion on this issue, I believe that this question must be answered in the negative.

In *State* v. *Pierce*, supra, 64 Conn. App. 211–12, the defendant was arrested while on probation for burglary

and possession of burglar's tools near a residence that he attempted to burglarize. Id., 211. Two months later, the defendant was arrested on a warrant for violating the terms of his probation. Id. The affidavit in that warrant application referred to the defendant's arrest for burglary and possession of burglar's tools. Id. In appealing from the revocation of his probation, the defendant argued, in part, that he did not receive notice of any basis for the revocation of probation other than the burglary charge. Id., 214. This court rejected that argument. In doing so, it noted "the fact that [the defendant] had been arrested on a warrant charging both burglary and the misdemeanor possession of burglar's tools." Id., 215. It further emphasized that, between the two charges highlighted in the warrant and the testimony offered at trial concerning the entire incident, "the defendant was made aware, both before and during the hearing, of the evidence that he had been in possession of burglar's tools." Id. In reaching that determination, the court acknowledged that the defendant could not "be found in violation of probation on grounds other than those with which he is charged. . . . The defendant, however, clearly had been charged with both burglary and possession of burglar's tools and, thus, he had notice of the charges both before and during the hearing." (Citation omitted.) Id. Therefore, *Pierce* stands for the proposition that a defendant receives constitutionally sufficient notice when the specific crimes underlying the violation of probation charge are contained in the warrant for violation of probation.

Similarly, in *Hooks*, the defendant claimed that he received constitutionally deficient notice because the state failed to specify the manner in which he violated the condition of his probation that he not violate a criminal law. *State* v. *Hooks*, supra, 80 Conn. App. 79. In rejecting that claim, this court noted that "the condition of the defendant's probation was that he would not violate any criminal law; the manner in which he violated that condition was through the commission of criminal offenses. Section 53a-32 (a) requires the state to inform the defendant of those charges once before the court. The arrest warrant application . . . specified the condition of probation *and the particular charges that formed the basis* of the charge of violation of probation. At both the defendant's arraignment . . . and the probation revocation hearing . . . the state reiterated those charges. Those recitations satisfied the demands of § 53a-32 (a)." (Emphasis added.) Id., 80.

Accordingly, both *Pierce* and *Hooks* strongly suggest that a defendant receives adequate notice prior to a probation revocation hearing when the state provides notice of both the condition he is alleged to have violated *and* the particular charges that form the basis of that condition's violation.[6] That precedent indicates that it is not enough for the state to apprise a defendant that he or she is alleged to have violated the condition

to not violate any criminal law. Instead, the defendant must be afforded notice of the specific crime that he or she allegedly has transgressed and which forms the basis of the revocation of his or her probation.[7]

That conclusion comports with fundamental principles of due process. Although probation revocation proceedings are "akin to a civil proceeding"; *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994); I believe that probationers, like defendants in criminal proceedings, must receive notice of the particular criminal offenses that he or she is alleged to have violated if the warrant is predicated on the charge that the defendant violated the condition to not break any criminal law. See *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) ("[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding, in all courts, state or federal"). Otherwise, a defendant is stripped of the ability to proffer evidence or assert any affirmative defenses in his or her effort to challenge the state's burden of establishing by a preponderance of the evidence all elements of the particular crime. Without knowledge of the precise offenses he or she is alleged to have committed, a defendant is left with no meaningful opportunity to defend and is precluded from adducing evidence that would conclude the case in his or her favor.[8] See *Jackson* v. *Virginia*, 443 U.S. 307, 314, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ("[a] meaningful opportunity to defend, if not the right to trial itself, presumes . . . that a total want of evidence to support a charge will conclude the case in favor of the accused").

In the present case, it is evident that the defendant did not receive adequate notice of the specific crimes that formed, in part, the basis of the court's determination that he violated the condition to not break any criminal law. The violation of probation warrant did not allege that the defendant violated §§ 21a-267 (a), 21a-277 (a)[9] and 53a-48, yet the court found him to have violated those provisions.[10] The court thus found the defendant in violation of his probation due to criminal offenses for which he never was provided notice by the state. See *Jackson* v. *Virginia*, supra, 443 U.S. 314. At the very least, as in all administrative proceedings, the defendant was entitled to be on notice of the particular legal theory that would jeopardize his continued probation. See *Pennsylvania Board of Probation & Parole* v. *Scott*, 524 U.S. 357, 364, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998) (noting the "administrative nature of parole revocation proceedings"); *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 823, 955 A.2d 15 (2008) ("[d]ue process [in the administrative hearing context] requires that the notice given must . . . fairly indicate the legal theory under which such

facts are claimed to constitute a violation of the law"). For that reason, I would conclude that the defendant's right to receive notice, as guaranteed by the due process clause of the fourteenth amendment to the United States constitution, was violated in the present case. See *State* v. *Davis*, supra, 229 Conn. 294.

Notwithstanding this conclusion, I would further conclude that the constitutional violation was harmless under the particular facts of this case. Although the warrant did not specify §§ 21a-267 (a), 21a-277 (a) and 53a-48 as underlying the charge that the defendant violated the condition that he not violate any criminal law, it did allege that the defendant possessed marijuana in violation of § 21a-279 (a) (1). The court expressly found that the defendant violated this criminal statute, citing evidence that he tested positive for THC as circumstantial evidence of his possession of marijuana. As the majority opinion notes, this specific charge was detailed in the warrant and was sufficient to support the court's finding that the defendant violated the condition of his probation that he not violate a criminal law. See parts I and IV of the majority opinion. Thus, having found that the defendant violated a condition of his probation, the court was entitled to revoke the defendant's probation on this basis alone.

Furthermore, the court was required to consider "the *whole record*" in deciding in the second stage dispositional factors of whether to "continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence." (Emphasis added; internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 148, 170 A.3d 120 (2017); see also General Statutes § 53a-32 (d) ("[n]o such revocation [of probation] shall be ordered, *except upon consideration of the whole record*" (emphasis added)). The court, therefore, was entitled to consider not only the defendant's violation of the conditions of his probation but the entire record in revoking his probation and sentencing him to incarceration. See *State* v. *Miller*, 83 Conn. App. 789, 802–803, 851 A.2d 367 (in holding that trial court did not abuse its discretion when it revoked defendant's probation, reviewing court noted that trial court "had before it the defendant's long criminal history" and evidence of "his cavalier attitude about his probation"), cert. denied, 271 Conn. 911, 859 A.2d 573 (2004). Here, the court had before it evidence of the facts underlying the defendant's arrest on October 6, 2016, including testimony from Detective Eric Medina, Officer Keith Shea, and Officer Mark Santopietro, all of whom were involved in his arrest on that date.[11] The defendant's rebuttal evidence, which included testimony from himself and two of his witnesses, was not credited by the court. Although it is the state's obligation to prove the harmlessness of a constitutional violation; see *State* v. *Golding*, supra, 213 Conn. 240; that burden is satisfied in

light of the record before us. I, therefore, respectfully agree with the majority that the judgment of the trial court should be affirmed.

[1] I agree with and join the majority opinion in all other respects.

[2] As the majority opinion explains, "revocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 25–26, 31 A.3d 1063 (2011).

[3] The court additionally noted that the defendant "has admitted to violating [§ 21-279 (a)] as far as possession of cocaine, but that was not alleged as a basis [for his violation of the condition that he not violate any criminal law]. So, while I do believe the [state has] proved that, I'm not really relying on that as a basis for my findings."

[4] In addition, the majority opinion determines that the court properly found the defendant to have violated the condition that he report to the Office of Adult Probation when requested and that he provide a clean urine test.

[5] As noted by the majority, the defendant seeks review of this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 213, which holds that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) Id., 239–40. Thus, my analysis focuses on the third and fourth prongs of *Golding*. See *State* v. *Ayala*, 324 Conn. 571, 598–99, 153 A.3d 588 (2017) (noting that when defendant's constitutional right to notice is violated, state must prove constitutional error is harmless beyond reasonable doubt); *State* v. *Jordan*, 132 Conn. App. 817, 826, 33 A.3d 307 (due process violation for improper notice of charges is of constitutional magnitude, requiring state to prove harmlessness beyond reasonable doubt), cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012).

[6] As the District Court of Appeal of Florida recently held, "the circuit court found [the defendant] in violation of condition five of his probation for committing the new law offense of assault. However, the [s]tate's affidavit of violation of probation did not allege that [the defendant] had committed an assault. A trial court is not permitted to revoke probation on conduct not charged in the affidavit of revocation. [R]evoking an individual's probation for conduct not alleged in the charging document deprives the individual of due process and constitutes fundamental error." (Internal quotation marks omitted.) *Jackson* v. *State*, 290 So. 3d 1037, 1038 (Fla. App. 2020) (per curiam).

[7] Indeed, it appears that the trial court in this case also understood that the defendant could not be found to have violated a particular criminal statute that was not alleged in the violation of probation warrant. As noted previously, the court declined to find that the defendant violated § 21-279 (a) for possessing cocaine—despite the defendant's having admitted to that offense—because that allegation was not made in the violation of probation warrant. See footnote 3 of this concurring opinion. As such, this explicit acknowledgment supports the majority's belief that the court did not intend to find the defendant in violation of criminal laws that were not alleged in the violation of probation warrant. See footnote 16 of the majority opinion.

[8] A simple hypothetical highlights my concerns. For instance, assume the warrant in the present case failed to allege that the defendant had violated § 21a-278 (a)—which proscribes the sale of drugs by a person who is not drug-dependent—in violation of the condition that he not violate any criminal law. If the court were to subsequently find that the defendant violated that statute, the defendant would not have been on notice to proffer evidence in his defense that he was a drug-dependent person and, therefore, was incapable of breaching that criminal law. This scenario illustrates why a failure to give notice of the specific criminal laws a probationer is alleged to have violated contravenes the fundamental principles of the right to notice under the due process clause.

[9] It is worth noting the similarities between §§ 21a-277 (a) (1) and 21a-278 (a) (1). The former statute provides in relevant part: "No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance, or (B) hallucinogenic substance." General Statutes § 21a-277 (a) (1).

General Statutes § 21a-278 (a) (1) provides that "[n]o person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, (A) one or more preparations, compounds, mixtures or substances containing an aggregate weight of (i) one ounce or more of heroin or methadone, or (ii) one-half ounce or more of cocaine or cocaine in a free-base form, or (B) a substance containing five milligrams or more of lysergic acid diethylamide. The provisions of this subdivision shall not apply to a person who is, at the time of the commission of the offense, a drug-dependent person."

Both statutes proscribe the possession of narcotic substances with the intent to sell. Section 21a-278 (a) (1), however, requires that the defendant be in possession of particular narcotics and in threshold amounts. It further allows a defendant to assert his or her drug-dependent status at the time of commission as an affirmative defense to avoid liability under the statute. See, e.g., *State* v. *Ray*, 290 Conn. 602, 623–24, 966 A.2d 148 (2009) (holding that drug dependency language in § 21a-278 (b) "effectively functions as an affirmative defense"). In contrast, § 21a-277 (a) (1) does not require specificity of the narcotic substance, a threshold amount of that narcotic substance, or provide for a drug-dependency affirmative defense.

[10] Nothing in the record indicates that the state ever filed a substitute information alleging violations of §§ 21a-267 (a), 21a-277 (a) and 53a-48. Cf. *State* v. *Repetti*, supra, 60 Conn. App. 618. In addition, although the state ultimately elicited from the defendant on cross-examination that he had a daily cocaine habit, it does not appear that the defendant asserted his drug dependency as a defense to his drug charges. Ironically, the court, observing that the defendant "admitted to violating [§ 21-279 (a)] as far as possession of cocaine," concluded that, because it "was not alleged as a basis [for his violation of the condition that he not violate any criminal law]," it made clear it would not rely on that evidence as a basis for the violation. See footnote 3 of this concurring opinion.

[11] That the court indicated it would not sentence the defendant to incarceration on the basis of the technical violations alone is ultimately of no consequence because evidence of the defendant's criminal activity was clearly relevant to the court in considering whether the beneficial aspects of probation were being served. Initially, the court acknowledged that it did not know the details of the defendant's criminal case. The state explained that evidence of the defendant's possession and sale of narcotics—coupled with his criminal history—indicates "that [he is] not the kind of person who should be on probation. . . . [The defendant] goes out, commits a robbery, does a substantial jail sentence, gets out, starts using drugs and starts selling drugs. That's not a person who belongs on probation anymore, unfortunately for [the defendant]." The court ultimately "agree[d] with the state" on this point. Thus, whether the state offered the evidence concerning the defendant's October 6, 2016 arrest for purposes of proving the violation or in support of the disposition as it originally intended, the court's remarks make clear that it considered the evidence for disposition.